# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| In re: | |
| **CHRISTOPHER R. SHAVER** and **ELIZABETH V. SHAVER,** | **Chapter 7** |
| | **Case No. 13-51460** |
| Debtors. | |
| **KIMBERLEY A. SHAVER,** | |
| Plaintiff, | |
| v. | |
| | **Adversary Case No. 14-05005** |
| **CHRISTOPHER R. SHAVER,** | |
| Defendant. | |

## MEMORANDUM OPINION

The matters before the Court are the dischargeability of debt owed by the debtor, Mr. Christopher R. Shaver ("Shaver"), to his former spouse, Ms. Kimberley A. Shaver ("Kimberley"). After hearing argument, and as more fully set forth below, the Court finds that the debt is, indeed, non-dischargeable under section 523(a)(15) of the Bankruptcy Code, and Shaver must pay Kimberley's reasonable attorney's fees and costs, as authorized by the Code and agreed to under the PSA.

### *Factual Background*

The facts of this case are not in dispute. Shaver and Kimberley were married from April 30, 2005, until their separation on January 20, 2011. During the course of their marriage, they incurred various debts upon which they were jointly liable, including the debt subject to the current dispute—a $30,000 loan to the couple from Kimberley's parents, Doug and Donna Lyle

(the "Lyle Debt").[1] In consummating the Lyle Debt, the Lyles, Shaver, and Kimberley did not enter into a written agreement; however, the parties stipulate to this debt's existence and all the material terms thereof. Accordingly, the Lyles borrowed $30,000 against their home equity line of credit and loaned the proceeds to Shaver and Kimberley, who, in return, made monthly payments of roughly $280 directly to the mortgage lender. Shaver and Kimberley were to continue making such payments until they paid the debt in full. Because of the divorce, however, the parties resolved to make other arrangements.

Due to the separation, Shaver and Kimberley entered into a series of agreements in which they sought to determine their respective obligations under each of their various jointly-held debts. On February 27, 2011, Shaver prepared a short document (the "Agreement"), signed by the Lyles, Shaver, and Kimberley, in which he agreed to pay directly to Kimberley $140 at the beginning of each month. *See* Plaintiff's Exhibit #1, *Shaver v. Shaver (In re Shaver)*, 14-05005 (Bankr. W.D. Va. July 9, 2014) ECF Doc. No. 17-1.

The next day, the couple entered into a Property Settlement Agreement ("PSA," and collectively with the Agreement, the "Separation Documents"), in which they outlined which spouse would be responsible for which debt. *See* Plaintiff's Exhibit #2, *Shaver v. Shaver (In re Shaver)*, 14-05005 (Bankr. W.D. Va. July 9, 2014) ECF Doc. No. 17-2. In Section V of the PSA, the parties stipulated, "Chris and Kim agree to equally divide all marital financial obligations accrued during this marriage, excluding home mortgages, except those debts listed solely in the name of Chris or Kim." *Id.* at 6. Thereafter, the parties list various credit cards and

---

[1] Although the complaint originally sought to determine the dischargeability of debts on a Lowes credit card and to Augusta Health for healthcare expenses, prior to the hearing, the parties agreed and stipulated that these debts were non-dischargeable under section 523(a)(15) and (a)(5), respectively. Thus, this opinion will only address the arguments relating to the dischargeability of the Lyle Debt.

2

debts and specify who would be responsible for each one. *Id.* at 6–7. The parties, however, did not expressly list the Lyle Debt or the Agreement therein.

Shaver made the $140 monthly payments as required by the Agreement from March 1, 2011, to June 1, 2013, at which time payments ceased with $23,878.82 in principal remaining on the Lyle Debt. On November 27, 2013, Shaver and his current spouse, Elizabeth Shaver, petitioned for relief under chapter 7 of the Bankruptcy Code. Shortly thereafter, on February 19, 2014, Kimberley instituted these proceedings to determine the dischargeability of the Lyle Debt under section 523(a)(15) of the Code.[2] At a pretrial conference, the parties agreed to set a trial date for July 23, 2014. On June 20, Kimberley moved for summary judgment, which the Court set for the same date and time as the trial.

At the hearing, the parties stipulated to the above facts; however, they disagreed about whether the Agreement created a new obligation to Kimberley or merely modified the repayment terms of the preexisting Lyle Debt. Kimberley's counsel asserted that under the Separation Documents, Shaver owed a monthly debt to Kimberley, which arose in contemplation of divorce, meaning it falls under the purview of Bankruptcy Code section 523(a)(15). Specifically, counsel argued either section V of the PSA included the Lyle Debt, or, alternatively, the Agreement created a new, binding obligation for Shaver to pay Kimberley $140 each month. In so arguing, Kimberley's attorney relied on the Bankruptcy Code's definition of "debt" and "claim" to suggest the Separation Documents collectively, or the Agreement alone, resulted in the creation of a new debt Shaver owed Kimberley. Finally, Kimberley's counsel argued that if the Court

---

[2]   Additionally, the complaint sought to determine the dischargeability of the Lowe's credit card and the Augusta Health debt. *See supra* note 1.

3

found the debt to be non-dischargeable, the Court should also require Shaver to recompense Kimberley for her attorney's fees and costs under section XVIII of the PSA.[3]

Conversely, Shaver's counsel argued the Agreement merely altered the repayment terms of the Lyle Debt for the convenience of the parties, which did not create any new liability. The Agreement, according to this argument, served merely to memorialize the then-unwritten Lyle Debt and simplify the means of repayment. Shaver's attorney argued the substantive terms of the Lyle Debt and ultimate payee remained the same, but the parties believed that Shaver paying Kimberley, who then would make the full payment in one check to the lender, would be more convenient. Moreover, Shaver's counsel also argued section V of the PSA did not cover the Lyle Debt, which is why the parties did not expressly list it in the section.

Ultimately, the Court determined summary judgment was not proper, based on the parties' dispute as to the genuine issue of material fact of whether the parties intended the Separation Documents to create a "debt" to Kimberley. The parties then proceeded to present evidence. Kimberley was the only witness, and she testified that the parties intended the Agreement to be part of the PSA and believed section V included the Lyle Debt. Shaver did not appear to testify, nor did his counsel put on any further evidence.

At the conclusion of the trial, the Court ruled from the bench, as more fully set forth below, that the Separation Documents created a new debt Shaver owed to Kimberley in contemplation of their divorce, and, accordingly, was non-dischargeable under section 523(a)(15). The Court took under advisement, however, the issue of attorney's fees.

*Discussion*

---

[3] Section XVII provides: "The parties agree that in the event court proceedings are instituted for the nonperformance of any covenant, promise or agreement herein contained, the defaulting party shall be responsible for and pay all costs and reasonable attorney's fees incurred by the non-defaulting party." Plaintiff's Exhibit #2 at 11, *Shaver v. Shaver (In re Shaver)*, 14-05005 (Bankr. W.D. Va. July 9, 2014) ECF Doc. No. 17-2.

4

a. *Dischargeability of the Lyle Debt*

Bankruptcy Code section 523(a) lists various debts Congress deemed non-dischargeable in bankruptcy. Relevant to the case at bar, subsection (a)(15) provides that an order of discharge under chapter 7 of the Bankruptcy does *not* discharge:

> [T]o a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

This provision requires an opponent to dischargeability to prove three things by a preponderance of the evidence: (1) the debt is owed to a spouse, former spouse, or child of the debtor; (2) the debt is not of the kind from section 523(a)(5)—i.e., in relation to a domestic support obligation; and (3) the debt must arise in connection with a divorce or separation. *In re Mayes*, 455 B.R. 506, 508 (Bankr. W.D. Va. 2011).

Based on the arguments made in Court and the evidence presented, the parties do not dispute the second prong; however, they disagree about whether Shaver owes the debt to Kimberley or to the Lyles. If, ultimately, the Court finds Shaver owes Kimberley the debt, it necessarily would have arisen in connection with the couple's divorce, since the parties crafted the Separation Documents as a means of consensually resolving their respective obligations under various joint debts. Therefore, the debt would not be eligible for discharge. Thus, the main inquiry for the Court was whether the Separation Documents created a new obligation for Shaver to pay Kimberley or merely altered the repayment terms of the Lyle Debt.

As a threshold matter, under Virginia law, "contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract."

5

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 205 (4th Cir. 2013) (quoting *Va. Hous. Dev. Auth. v. Fox Run Ltd.*, 497 S.E.2d 747, 752 (Va. 1998)).  The parties stipulated that Shaver drafted the Agreement and the parties signed it the day before they signed the PSA, which Shaver also drafted.  Because both documents dealt with the allocation of various marital property and debts, were contemporaneously drafted by the same individual, and were created to divide marital obligations in the course of the divorce, the Court construes them as being one, single contract.

Accordingly, the Court finds that the Separation Documents created a new debt Shaver owed to Kimberley.  Based on the evidence and testimony presented to the Court, the parties crafted the Separation Documents to divide the marital debts between the two former spouses.  As part of those negotiations, Shaver agreed to pay Kimberly $140 every month as his portion of the marital obligation to the Lyles, and Kimberley would then write one check to the mortgagee.  This transaction created a new debt, establishing Kimberly's right to receive payment from Shaver.

From the evidence and uncontroverted testimony, the Court is satisfied that Kimberley has proven by a preponderance of the evidence that Shaver (1) owed the debt to her, (2) which was not in the nature of a domestic support obligation, and (3) which he incurred in the course of a divorce. Thus, Shaver's obligation to pay Kimberley $140 per month for the duration of the Lyle Debt is non-dischargeable under section 523(a)(15) of the Bankruptcy Code.

    b. *Attorney's Fees*

In her Complaint, Kimberley argued section XVIII of the PSA requires any party in default of any provision of the PSA to cover "all costs and reasonable attorney's fees incurred by the non-defaulting party" in enforcing the contract.  Plaintiff's Exhibit #2 at 11, *Shaver v. Shaver*

*(In re Shaver)*, 14-05005 (Bankr. W.D. Va. July 9, 2014) ECF Doc. No. 17-2.  Because she had to litigate the dischargeability of the Lyle Debt, Lowes credit card debt, and debt to Augusta Health, she is entitled to have Shaver reimburse her attorney's fees and court costs.  The fees and costs were necessary to enforce the PSA against the defaulting party.  *See In re Wolohan*, No. 10-13041-TJC, 2012 WL 3561784 (Bankr. D. Md. Aug. 16, 2012) (taxing fees and costs against the defendant in a dischargeability action under section 523(a)(15)); *accord In re Pennington*, No. 10-31642, 2011 WL 6210729, at *6 (Bankr. W.D. N.C. Dec. 14, 2011) ("Similar to the analysis concerning Section 523(a)(5), courts have held that the debt excepted under Section 523(a)(15) may include attorneys' fees.") (citing *In re Ballard*, No. 09-52809, 2011 WL 2133529, at *2–*3 (Bankr. E.D. Ky. May 25, 2011)). Accordingly, the Court believes taxing the plaintiff's fees and costs to the defendant is well founded.

*Conclusion*

In conclusion, the Court **ORDERS** that the $140 monthly payments Shaver agreed to pay Kimberley in the Separation Documents is a non-dischargeable debt and awards the plaintiff reasonable attorney's fees and costs.  Specifically, the Court finds that the Agreement and PSA are a single contract between the plaintiff and defendant.  The PSA and Agreement, together, created a new obligation for the defendant to make specified payments to the plaintiff at specified times.  This debt was not a part of a domestic support obligation; however, it did arise in connection with a divorce.  Furthermore, when the defendant failed to make payments under the terms of the Agreement, such actions constituted a default of the terms of the PSA, which, when coupled with prior circuit precedent and the specific context of this case, entitled the plaintiff to attorney's fees and costs.

The Court orders the plaintiff's attorney to submit an order, pursuant to Rule 7058, consistent with this opinion within fourteen days (14) of the date of this Opinion. The order should grant judgment to the plaintiff, pursuant to Rule 7054, for the amounts set forth in the complaint, plus reasonable attorney's fees and costs, and declare the amounts to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).

Dated: __August 5, 2014_____

*Rebecca B Connelly*
Rebecca B. Connelly
U.S. Bankruptcy Judge